United States District Court
Southern District of Texas
**ENTERED**
December 02, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRIAN TULLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00192 |
| | § | |
| EXXONMOBIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

In August 2022, Plaintiff Brian Tullis filed an Original Collective Action Complaint against Defendant ExxonMobil Corporation ("ExxonMobil") under the Fair Labor Standards Act ("FLSA"). (D.E. 1). Tullis alleges that he and others who worked for or on behalf of ExxonMobil as security advisors were improperly classified as independent contractors and paid a day rate instead of being paid overtime for hours worked above 40 hours each week. ExxonMobil has filed a "Motion to Dismiss Plaintiff's Complaint and/or Strike Plaintiff's Overbroad Collective Definition and Related Collective Allegations," to which Tullis has responded. (D.E. 7, 14, 18). Also pending are ExxonMobil's motion to stay the proceeding, Tullis's motion for discovery, and all associated responses and replies. (D.E. 8, 10, 11, 15, 19, 20, 21).

For the reasons discussed further below, it is recommended that ExxonMobil's motion to dismiss (D.E. 7) be **DENIED**, ExxonMobil's motion to stay (D.E. 8) be

**GRANTED**, Tullis's motion for discovery (D.E. 11) be **DENIED WITHOUT PREJUDICE**, and this case be stayed and administratively closed.

## I.    ALLEGATIONS AND CLAIMS

In the complaint, Tullis alleges that he brings this lawsuit individually and on behalf of all current and former security advisors who worked for ExxonMobil and were paid a day rate without compensation.  (D.E. 1 at 1).  He generally alleges that he and other Security Advisors worked more than 40 hours each week, but ExxonMobil did not pay them overtime for any hours worked in excess of 40 hours per week.  (*Id.*).  Instead, security advisors were classified as independent contractors who were ineligible for overtime and were paid a day rate.  (*Id.* at 2).  Tullis worked as a security advisor for ExxonMobil from February 2019 until December 2020 in Portland, Texas.  (*Id.*).  During this time, he was paid a daily rate regardless of how many hours he worked.  (*Id.* at 2-3).  The relationship between himself and ExxonMobil was an employee-employer relationship.  (*Id.* at 3).  He defines the FLSA collective of similarly situated workers to include: "All Security Advisors employed by or working on behalf of [ExxonMobil] and paid according to its day rate pay plan in the past three (3) years."  Tullis alleges that the identities of these putative class members can be ascertained from ExxonMobil's records.  (*Id.*).

Tullis alleges that ExxonMobil has a practice of using staffing companies to source its workers, including him.  (*Id.* at 4).  He was hired to provide security services during construction on an ExxonMobil plant.  He regularly worked 10 to 12 hours or more each day for weeks at a time but was never paid overtime.  (*Id.*).  He was one of many security

2

advisors that ExxonMobil hired and improperly classified as independent contractors to avoid paying overtime.  (*Id.* at 4-5).  While these various employees may have had different official job titles and specific duties, they were all security workers subject to the same illegal pay practice.  (*Id.* at 5).  They all performed the same general job duty, which was "to secure [ExxonMobil's] interests in the furtherance of refining and marketing petroleum and chemicals."  (*Id.*).

ExxonMobil controlled the work schedules of Tullis and the other putative collective members.  (*Id.*).  When Tullis interviewed for his position, it was with agents of ExxonMobil, and ExxonMobil dictated the staffing company he had to use for payment, assigned and governed his work, required that he report directly to ExxonMobil management, required that he complete and submit all ExxonMobil security documentation, established quality standards and other requirements for his job, required that he follow their security policies, designated his work locations, and required that he wear ExxonMobil-branded clothing while at work.  (*Id.* at 6-7).  ExxonMobil determined the amount and type of compensation paid to Tullis and the putative collective members by dictating the hours and days they would work and the rates they were paid, along with preventing them from working for any other companies during their employment.  (*Id.* at 7).  ExxonMobil provided all the equipment and tools necessary for the job.  (*Id.* at 7-8).  The work performed by the putative collective members was an essential part of ExxonMobil's core business.  (*Id.* at 8).  ExxonMobil retained the power to hire, fire, and discipline all the putative collective members, and was responsible for timekeeping,

payroll, and other employment practices. (*Id.*). ExxonMobil knew, or showed reckless disregard for whether, the putative collective members were improperly classified as independent contractors and that they were entitled to overtime pay. (*Id.* at 10).

Tullis alleges that ExxonMobil's practice of misclassifying its employees as independent contractors violates the FLSA. (*Id.* at 11-12). ExxonMobil applied this policy regardless of specific factors like job position, job duties/responsibilities, or geographic location. (*Id.* at 11). Specifically, Tullis alleges that ExxonMobil violated Sections 7 and 15 of the FLSA by "employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates." (*Id.* at 12). ExxonMobil knew, or recklessly disregarded, that its pay practices violated the FLSA. (*Id.* at 13). Accordingly, Tullis alleges that he and the putative collective members are entitled to overtime wages for all hours worked above 40 hours per week, in addition to liquidated damages, attorneys' fees, and costs. (*Id.*).

As to collective action allegations, Tullis alleges that his experiences are typical of the experiences of the putative collective members and that this does not depend on the personal circumstances of any putative collective members, their specific job titles, or the precise requirements of their jobs. (*Id.* at 13-14). Each of the putative collective members were non-exempt employees who were entitled to overtime pay. (*Id.* at 14).

## II.   MOTION TO DISMISS (D.E. 7)

### a.   Arguments

In the motion to dismiss, ExxonMobil first argues that Tullis's complaint should be dismissed because the consent form attached to the complaint states that he consents to make a claim against NES Global, not ExxonMobil.  (D.E. 7 at 8-10).  Second, ExxonMobil contends that Tullis's allegations are too vague to properly identify which workers he seeks to represent in a collective action.  (*Id.* at 11-12).  ExxonMobil argues that Tullis has not even alleged his own job duties sufficiently to establish what other workers could be similarly situated to him.  (*Id.* at 12-13).  As to Tullis's allegation that the "day rate" pay scheme connects all putative collective members, ExxonMobil asserts that Tullis makes no reference to the company that actually employed him, NES Global, nor any allegation regarding the various entities that the putative collective members could work for or how their compensation schemes are similar to his own.  (*Id.* at 13-14).  ExxonMobil contends that Tullis's class definition is overbroad as it would include security advisors who never worked more than 40 hours in a workweek merely because they were paid on a day-rate basis.  (*Id.* at 14).  Finally, ExxonMobil argues that Tullis has failed to plead facts supporting a nationwide class because he worked only for NES Global in Portland, Texas, and has alleged no factual support that he was similarly situated to all security advisors paid on a day rate plan anywhere in the country.  (*Id.* at 15-17).

Tullis first responds that a Rule 12(b)(6) motion to dismiss is not the proper vehicle to challenge collective action allegations because such challenges are not related to the

plausibility of the claims, but rather the scope and nature of proceeding as a class.  (D.E. 14 at 3-4).  He argues that the Fifth Circuit's recent decision in *Swales* resolved any dispute between district courts regarding this issue and recognized that the scope of a collective can only properly be determined after initial discovery.  (*Id.* at 5-6).  Tullis contends that his collective action allegations are sufficient for this Court to order initial discovery because he has defined the putative collective as security advisors who worked on behalf of ExxonMobil and were paid according to a day rate plan in the past three years.  (*Id.* at 6-10).  Alternatively, Tullis argues that even applying a "fair notice" standard under Federal Rule of Civil Procedure 8, his allegations are sufficient.  (*Id.* at 10-14).  Specifically, he asserts that he sufficiently pled that his job duties included providing a security presence at a worksite and securing ExxonMobil's interests in alignment with the company policies.  (*Id.* at 14-15).  Tullis contends that he pled that ExxonMobil used a violative day rate pay plan and that he did not need to include any allegations regarding NES Global.  (*Id.* at 15-16).  Lastly, Tullis argues that ExxonMobil cannot limit the class geographically through a motion to dismiss, and that dismissal under Rule 12(f) is inappropriate because all of his allegations are directly related to his claims and the collective action allegation.  (*Id.* at 16-18).

ExxonMobil replies that *Swales* does not excuse Tullis from the pleading requirements of Rule 8 and immediately allow for preliminary discovery.  (D.E. 18 at 3).  ExxonMobil reiterates that the complaint lacks allegations regarding any job duty similarities between himself and the other putative collective members, and instead

provides only vague statements that arguably define duties of every worker performing services for ExxonMobil. (*Id.* at 3-5). ExxonMobil further reiterates that Tullis's allegations do not support a plausible claim outside of Texas because he does not provide any factual allegations to support the claim that all security advisors who worked for ExxonMobil were compensated the same way as him. (*Id.* at 6-7).

       *b.*    *Applicable Law*

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, the court must not go outside the pleadings and must accept all well-pleaded facts as true, looking at them in the light most favorable to the plaintiff. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).

A pleading must include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of what the claim is. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, but the plaintiff must nonetheless provide more than merely labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the complaint are assumed to be true, even if unlikely, but the allegations must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility where the factual allegations allow the court to reasonably infer that the defendant is liable

for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facts that are merely consistent with a defendant's liability are insufficient.  *Id.*

Under Rule 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court should only strike parts of a pleading if the statements have "no possible relation to the controversy" or are "immaterial or impertinent" to the controversy itself.  *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir.1962)).  Rule 12(f) can also be used where it is impossible for the plaintiff to prevail as pleaded, but the standard is the same applied to Rule 12(b)(6) motions.  *Stoller Enterprises, Inc. v. Fine Agrochemicals LTD.*, No. 4:20-CV-00750, 2022 WL 1238547, at *2 (S.D. Tex. Apr. 27, 2022).

Under the FLSA,

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The statute does not otherwise define what it means for two employees to be "similarly situated."  "[T]he relevant inquiry for the court is whether the proposed class members performed the same basic tasks as part of their employment and were subject to the same pay decisions, policies, or practices."  *Mathis v. Stuart Petroleum Testers, Inc.*, No. 5:16-CV-094-RP, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29, 2016).

"[G]eographic commonality is not necessary to satisfy the FLSA collective action's similarly situated requirement, so long as the employees were impacted by a common policy." *Holt v. XTO Energy, Inc.*, No. MO:16-CV-00162-RAJ, 2016 WL 11083342, at *3 (W.D. Tex. Nov. 10, 2016).

Both parties heavily rely on the Fifth Circuit's recent decision in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, as in this case, the plaintiffs, who were truck drivers, asserted that the defendant misclassified them as independent contractors. *Id.* at 433. They contended that the defendant controlled their work to such an extent that they were employees entitled to minimum wage and sought to pursue this claim in an FLSA collective action. *Id.* The plaintiffs sought conditional certification of this proposed collective, which would allow them to send written notice to other workers who could then become parties to the collective action by filing written consent with the court. *Id.* at 434.

The Fifth Circuit noted that the overwhelming majority of district courts, including the district court in *Swales*, apply the two-step process created in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987), when determining whether prospective opt-in plaintiffs in a proposed collective are "similarly situated" enough to meet the requirements of the FLSA. *Id.* at 436. The Court noted that the first step, called conditional certification, is typically based on the pleadings and affidavits of the parties and is an "initial notice" stage in which the district court determines whether the proposed collective members are similar enough to receive notice. *Id.* The second step occurs after discovery, generally

following a defendant's motion to decertify the collective, and applies a stricter standard to determine whether the named plaintiffs and opt-in plaintiffs are similar enough to proceed in an FLSA collective action. *Id.* at 437. The Fifth Circuit also noted an alternative approach to *Lusardi* in which the district court applies all requirements of Federal Rule of Civil Procedure 23, which governs class actions, to the extent they are not incompatible with the FLSA. *Id.*

The Fifth Circuit rejected the alternative approach, noting that it relies on an improper analogy to Rule 23 that is not supported by the language of the FLSA. *Id.* However, the Court also rejected *Lusardi*. *Id.* at 439. The Court first noted that *Lusardi* and the general idea of collective-action certification has no universally understood meaning, and therefore is of little help to district courts exercising their notice-sending authority. *Id.* at 439-40. Second, the Court concluded that *Lusardi* only distracts from the FLSA's text, which does not mention "conditional certification" or any other sort of process that is similar to the Rule 23 requirements for class actions. *Id.* at 440. The Court concluded that nothing in the law or the Supreme Court precedent interpreting it requires or recommends any certification process in FLSA collective actions. Rather than adhering to a certification process with no basis in the text of the law, the Court held that the law requires a district court to "ensur[e] that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Id.*

Rather than following the two-step *Lusardi* framework, which is both too flexible and too rigid at certain stages, the Fifth Circuit stated that:

> [A] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible.

*Id.* at 441.  The amount of discovery necessary will depend on the allegations in the particular case.  *Id.* at 442.  The Court concluded that determining whether merits issues can be answered collectively is unrelated to an improper endorsing of the merits and is in fact necessary to ensure that the court meets its responsibility to only authorize notice to actual potential plaintiffs.  *Id.*

Given the facts of *Swales*, the Fifth Circuit stated that applying *Lusardi* was inappropriate because the threshold issue of whether the named plaintiffs and opt-in plaintiffs were similarly situated required an application of the economic-realities test, "which asks how much control the employer had over the independent contractors."  *Id.* "Thus, the district court needed to consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis."  *Id.*  Some discovery was available at the time of the district court's decision in *Swales*, and the Fifth Circuit noted that it was proper, and indeed necessary, for the court to consider this evidence prior to sending notice, even if the same evidence would again be used later to determine the ultimate merits issue.  *Id.* at 442-43.

The available evidence included variations between the named plaintiffs and others who opted in before notice was sent, including significant differences in the lengths of their contracts and how much control they had over their own profitability.  *Id.* at 442.  For

example, some opt-in plaintiffs decided only to work for specific customers or in specific

regions, at least one hired an employee to drive for him, and they disagreed about whether

they had to refuel at the defendant's recommended fuel stops or have their trucks serviced

by defendant.  The Fifth Circuit concluded that the differences between the potential opt-

ins who received notice were even starker, noting that:

> Over 400 drivers with independent-contractor agreements hired their own
> employees to help operate the equipment. KLLM offered 41 different
> compensation arrangements that the drivers could choose from. And drivers
> had different options for leasing their trucks—they could do so from KLLM
> or lease or buy a truck from a third party.

The Court stated that this evidence was relevant to determining at the notice stage whether

the contractors were sufficiently similarly situated to proceed with a collective action.  *Id.*

In *Hutchings v. XTO Energy, Inc.*, the plaintiff filed a collective action complaint

under the FLSA alleging that he, and others similarly situated, were misclassified as

independent contractors and paid a flat day-rate that improperly deprived them of overtime

pay.  *Hutchings v. XTO Energy, Inc.*, No. MO:20-CV-94-DC-RCG, 2021 WL 2419456, at

*1 (W.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, No. MO:20-CV-00094-

DC, 2021 WL 2934898 (W.D. Tex. Mar. 5, 2021).[1]  Plaintiff defined the class of similarly

situated employees as: "All Field Foremen who worked for, or on behalf of XTO Energy,

Inc., who were paid for a day-rate with no overtime during the past 3 years."  In response,

the defendant filed a motion to dismiss and/or strike the proposed class definition under

---

[1] Notably, the Report and Recommendation in *Hutchings* was entered before the
Fifth Circuit's decision in *Swales*, but it was adopted by the District Court after *Swales*.

Rules 12(b)(6) and 12(f).  *Id.*  As here, the defendant contended that the proposed class definition was insufficient to give defendant notice of who the potential collective members were because the allegations did not provide "sufficient detail regarding the job duties, pay practices, and geographic location of the putative class members."  *Id.* at *2.

The court noted that there is some dispute over whether dismissal of FLSA collective action allegations under Rule 12(b)(6) before the plaintiff made a motion for conditional certification.  *Id.* (citing cases).[2]  However, the court concluded that it was appropriate to apply the pleading standard to collective action allegations because "a plaintiff [must] give the defendant fair notice of the putative class, which is a much different inquiry than that at the conditional class certification stage."  *Huchingson v. Rao*, No. 5:14-CV-1118, 2015 WL 1655113, at *3 (W.D. Tex. Apr. 14, 2015).

Thus, the court proceeded to analyze the allegations in the complaint in relation to the factors relevant to determining whether employees are similarly situated.  *Hutchings*, 2021 WL 2419456 at *3.  As to job duties, the plaintiff alleged that he "oversaw the subcontractors constructing the infrastructure for the wellsite in the field. He ensured that this construction complied with the well and construction plans created by XTO or their clients. This included the construction of the tank farms, the dirt work for the drilling pad, and other infrastructure used in the drilling and 'fracking' process."  He also alleged that all other potential collective members performed the same or similar job duties and that

---

[2] As discussed above, the Fifth Circuit has now rejected the notion of this conditional certification stage in FLSA collective action proceedings.

they were subjected to the same or similar policies and procedures.  The court concluded that these allegations were sufficient to provide the defendant with notice of the putative collective.  *Id.*

As to the alleged illegal pay scheme and the defendant's claim that the plaintiff "[made] no mention of the actual party that employed him or to which he contracted—a consulting firm," and "no reference to the compensation scheme set out by the consulting firm that hired him, or any consulting firm that may have paid the putative class members a day rate," the court stated that the plaintiff brought the action against the defendant, not the consulting firm, and it was unnecessary to name the consulting firm.  Further, the court concluded that plaintiff adequately alleged that he and all potential collective members were paid a day rate regardless of the number of hours worked, all worked similar hours, and were denied overtime as a result of this illegal pay practice.  *Id.*

Finally, as to the geographic location of the potential collective members, the court concluded that the plaintiff had adequately alleged facts supporting a nationwide class because he worked for the company for around seven months and sufficiently alleged that his experience made him aware of other potential class members that were subject to the same illegal pay practice, regardless of their geographical location.  *Id.* at *4.  Thus, the court denied the motion to dismiss.  *Id.* at *5; *Hutchings*, 2021 WL 2934898 at *1-3.

    *c.*    *Analysis*

Here, as an initial matter, Tullis has now submitted a proper consent form in which he consents to sue ExxonMobil. (D.E. 20-1 at 2). Thus, ExxonMobil's argument regarding the consent form is now moot.

As to Tullis's argument that *Swales* precludes ExxonMobil's motion to dismiss and allows him to proceed directly to preliminary discovery, the Fifth Circuit's reasoning in *Swales* instead points to the opposite conclusion. *Swales* requires that this Court begin analyzing the facts and legal considerations that are material to determining what employees are similarly situated "at the outset of the case." *Swales*, 985 F.3d at 441. One of the Fifth Circuit's concerns with the *Lusardi* framework was that it allowed collective actions to proceed farther than they should because of a rigid adherence to particular steps that resulted in district courts ignoring certain evidence and information that should have been considered from the outset. *See generally id.* at 439-42. Allowing the named plaintiff in collective action cases to proceed directly to preliminary discovery without any analysis of whether they have a plausible collective action claim in the first place would result in the exact same type of problem the Fifth Circuit was attempting to rectify in *Swales*. Additionally, in order for this Court to be able to conduct an analysis of what facts and legal considerations are material to the "similarly situated" analysis, it must have allegations sufficient to know who the plaintiff claims as part of the collective and why. This cannot be done only after preliminary discovery. This Court must know this information before authorizing preliminary discovery. *See Swales*, 985 F.3d at 441.

Moreover, just as before *Swales*, the standard to be applied when ruling on a Rule 12(b)(6) motion is different than the standard to be applied after preliminary discovery when determining the proper scope of the collective. *Huchingson*, 2015 WL 1655113, at *3. The analysis at this stage is based solely on the pleadings and requires only fair notice of what the claims are, including the collective action claims. *Twombly*, 550 U.S. at 555. The analysis following *Swales* discovery is based on the evidence and requires a higher standard than fair notice to ExxonMobil before this Court can authorize notice to potential opt-in plaintiffs.

However, taking the well-pleaded allegations in the complaint as true, Tullis has met the notice pleading standard applicable at this stage of the proceedings. *Twombly*, 550 U.S. at 555; *Scanlan*, 343 F.3d at 536; Fed. R. Civ. P. 8(a)(2).  This case is analogous to *Hutchings*.  First, as to job duties, Tullis has alleged that he provided security services during construction at an ExxonMobil plant, and that he and all other such security advisors performed the same general job duty, which was "to secure ExxonMobil's interests in the furtherance of refining and marketing petroleum and chemicals." (D.E. 1 at 4-5).  The complaint does not contain the most detailed factual allegations imaginable, and is in fact less detailed than the description of job duties provided by the plaintiff in *Hutchings*.  *See Hutchings*, 2021 WL 2419456 at *3 (discussing the plaintiff's allegations).  However, factual allegations do not need to be detailed, and Tullis's allegations are sufficient to provide fair notice of who Tullis seeks to include in the collective: security employees who

undertook the duties necessary to secure ExxonMobil's interests at its worksites. *Twombly*, 550 U.S. at 555 (stating that factual allegations need not be detailed).

As to the illegal pay scheme, Tullis has alleged that he and all others that he seeks to include in the collective worked more than 40 hours each week, but were not paid overtime, and that ExxonMobil applied this policy regardless of specific factors like title and individual job duties. (D.E. 1 at 1, 11). As in *Hutchings*, ExxonMobil's argument that Tullis has failed to reference the party who actually employed him, NES Global, is unavailing because Tullis has brought his claim against ExxonMobil. *Hutchings*, 2021 WL 2419456 at *3. An analysis of whether ExxonMobil can be considered his true employer will require the application of the economic realities test, as noted in *Swales*, and it is unnecessary for Tullis to mention NES Global in order to survive a Rule 12(b)(6) motion.

Finally, as to the geographic location of the potential collective members, Tullis has adequately alleged facts supporting a nationwide class because he worked for the company for around 22 months and has alleged that his experience made him aware of other potential collective members that were subject to the same illegal pay practice, regardless of their geographical location. (*See* D.E. 1 at 5, 13-14); *Hutchings*, 2021 WL 2419456 at *4 (concluding the same where the employee worked at the company for 7 months).

To be sure, Tullis will need to provide evidence that he and all the other workers he seeks to include in this collective action are similarly situated before notice is sent. *Swales*, 985 F.3d at 440-43. However, that is not an issue to be decided solely on the pleadings at this stage. The pleadings sufficiently identify the desired collective as security employees

who were designated as independent contractors instead of employees and paid under a day rate.  As in *Swales*, the issues ExxonMobil identifies regarding whether these workers' contracts, employment conditions, and specific job duties render them similarly situated are appropriate and necessary considerations prior to notice being sent, but not prior to preliminary discovery.  *See also Eshelman v. MPFP, LLC*, No. 4:20-CV-3119, 2022 WL 2655821, at *2-4 (S.D. Tex. June 22, 2022) (addressing issues similar to those currently raised by ExxonMobil following preliminary discovery).  It is preliminary discovery that will provide the answer to whether this proposed group is sufficiently similar to maintain an FLSA collective action.

Finally, as to Rule 12(f), Tullis's collective action allegations are not redundant or scandalous, or "immaterial or impertinent" to the controversy itself.  *Coney*, 689 F.3d at 379; Fed. R. Civ. P. 12(f).  There is no basis to strike them.

Accordingly, it is recommended that ExxonMobil's motion to dismiss (D.E. 7) be **DENIED**.

## III.  MOTION TO STAY (D.E. 8)

### a.   Arguments

In the motion to stay, ExxonMobil argues that it is appropriate to stay the proceeding pending the Supreme Court's decision in *Hewitt v. Helix Energy Solutions, Inc.*, 15 F.4th 289 (5th Cir. 2021), *petition for cert. granted*, 2022 WL 1295708 (U.S. May 2, 2022) (No. 21-984).  (D.E. 8 at 1).  ExxonMobil contends that, like the defendant in *Helix*, it intends to assert the affirmative defense that Tullis is exempt from the FLSA's overtime provisions

under the administrative, executive, and/or highly-compensated employee exemption, and therefore the Supreme Court's decision in *Helix* will be determinative of the central legal issue in this case. (*Id.* at 2-3). ExxonMobil asserts that a stay: (1) would not prejudice Tullis; (2) would simplify the issues in question by resolving the question of whether a day-rate worker whose guaranteed pay for any week they work exceeds the regulatory minimum is exempt from the overtime requirements of the FLSA; and (3) would be appropriate where discovery has not even begun and could be avoided to a significant degree if *Helix* renders Tullis exempt from the FLSA's overtime requirements. (*Id.* at 5-9). ExxonMobil subsequently filed a notice of supplemental authority citing a recent case from the District of Delaware that was stayed pending the decision in *Helix*. (D.E. 10).

Tullis responds that *Helix* only addresses the narrow issue of whether the reasonable-relationship test in the regulations applies to the FLSA overtime exemption for highly compensated employees. (D.E. 15 at 1-2). He argues that, even if the Supreme Court reverses the Fifth Circuit's decision in *Helix* and concludes that highly compensated employees do not have to meet the reasonable-relationship test, ExxonMobil would nonetheless have to show that Tullis and the opt-in plaintiffs "performed exempt job duties, were guaranteed a *bona fide* salary, and that the guaranteed salary met the requisite levels." (*Id.* at 2, 7-9). Second, Tullis contends that stay will have little effect on the scope of discovery in this case because ExxonMobil will still have to produce discovery regarding pay data, job duties, hours worked, Exxon's control and oversight, or any other economic realities factors. (*Id.* at 4, 8). Tullis notes that ExxonMobil has not actually raised the

19

relevant affirmative defenses at this stage because it has not filed an answer.  (*Id.* at 4-6).

Third, he contends that he will be prejudiced because a stay risks the loss of testimonial

and documentary evidence.  (*Id.* at 6).  Additionally, he argues that discovery likely will

not be complete when the Supreme Court issues its decision anyway, but rather only *Swales*

discovery and potentially briefing on whether notice should issue.  (*Id.* at 6-7).  Finally,

Tullis asserts that the public would not benefit from a stay.  (*Id.* at 9).

ExxonMobil replies that *Helix* will have a wider effect on the scope of the highly

compensated employee exemption than Tullis claims.  (D.E. 19 at 1-4).  Moreover,

ExxonMobil argues that any decision in this case that is ultimately contrary to the holding

in *Helix* will be prejudicial to the parties.  (*Id.* at 4-5).

> ### b.   Applicable Law

District courts have "the discretion to stay cases incidental to [their] power to control

the disposition of [their] docket, including when a pending ruling from a higher court may

affect the case at hand."  *Bilberry v. JPMorgan Chase Bank, N.A.*, No. 1:20-CV-470-RP,

2021 WL 536440, at *2 (W.D. Tex. Jan. 13, 2021) (citing *Landis v. N. Am. Co.*, 299 U.S.

248, 254 (1936)).  When considering whether to stay a case, courts must consider:

"(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the

nonmoving party, (2) whether a stay will simplify the issues in question and trial of the

case; and (3) whether discovery is complete and whether a trial date has been set."  *Id.*, *see*

*also Trahan v. BP*, No. CIV.A. H-10-3198, 2010 WL 4065602, at *1 (S.D. Tex. Oct. 15,

2010) (listing similar considerations).  "Staying a case pending in a district court in the

Fifth Circuit is appropriate when the district court anticipates that the Fifth Circuit will issue a ruling in an unrelated case that addresses unresolved issues in the stayed case." *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015).

In *Helix*, the plaintiff alleged that he was paid a daily rate and was entitled to overtime pay. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 983 F.3d 789, 792 (5th Cir. 2020) ("*Helix I*"). The defendant contended that he was not entitled to overtime pay because he was either an executive or a highly compensated employee, both of which are exempt from the FLSA overtime requirements. *Id.* (citing 29 C.F.R. §§ 541.100, 541.601). However, to show that either exemption applied, the defendant was required to show that the plaintiff was paid on a "salary basis," despite the fact that he was paid a daily rate. *Id.* Under the regulations, a worker paid a daily rate may nonetheless be considered to be paid on a salary basis "if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b); *see also Helix I*, 983 F.3d at 792-94 (discussing the regulations and requirements in more detail). The plaintiff contended that he was not paid on a salary basis, and therefore was not exempt from FLSA overtime, because the defendant failed to comply with § 541.604(b). *Helix I*, 983 F.3d at 792. The defendant contended that it was not required to comply with § 541.604(b). *Id.*

The Fifth Circuit concluded that the defendant was not complying with either prong of § 541.604(b) because the plaintiff was not paid any minimum weekly amount and there

was no reasonable relationship between what he was actually paid and the theoretical minimum weekly amount suggested by the defendant. *Id.* at 794. The Fifth Circuit further rejected the defendant's argument that it was not required to follow § 541.604(b) because the plaintiff was a highly compensated employee. The Court stated that in order to qualify as a highly compensated employee, the plaintiff's compensation nonetheless had to satisfy the salary-basis test and the two prongs of § 541.604(b). *Id.*

On rehearing *en banc*, the Fifth Circuit again reached the same conclusion. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 292-98 (5th Cir. 2021) ("*Helix II*"). The Court noted that, in order for an employee to fall under the regulatory exemptions for "highly compensated" employees and "executive," "administrative," or "professional" employees, three conditions must be met. *Id.* at 290 (citing 29 C.F.R. §§ 541.601, 541.100, 541.200, 541.300). The Court explained:

> First, the employee must meet certain criteria concerning the performance of executive, administrative, and professional duties. Second, the employee must meet certain minimum income thresholds. Finally, the employee must be paid on a "salary basis." And although the duties criteria and income thresholds vary from exemption to exemption, the regulations apply the same salary-basis requirement to all four exemptions. … So earning a certain level of income is necessary, but insufficient on its own, to avoid the overtime protections of the FLSA. The employee must also be paid on a salary basis, as well as perform certain duties. And unless those tests are met, the employee is not exempt ... no matter how highly paid they might be.

*Id.* at 290-91 (internal citations and quotation marks omitted). The Court then reiterated its initial analysis that in order to qualify as a highly compensated employee, the plaintiff's compensation nonetheless had to satisfy the salary-basis test and the two prongs of § 541.604(b). *Id.* at 293-94, 296-97.

22

On May 2, 2022, the Supreme Court granted the defendant's petition for a writ of certiorari. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 142 S. Ct. 2674 (2022). The case was argued before the Court on October 12, 2022, and remains pending.

      *c.*    *Analysis*

It is recommended that the motion to stay be granted because, even if Tullis is correct and the decision in *Helix* affects only one component of the exemption issue, that one component could significantly change the scope and focus of discovery as to Tullis and the potential opt-in collective members. Addressing the relevant factors, first, Tullis has not shown that he or the putative collective members would be prejudiced by what will likely be a roughly six-month stay until the Supreme Court issues its decision in *Helix*. *See Bilberry*, 2021 WL 536440, at \*2. Tullis argues that he will be prejudiced because a stay risks the loss of testimonial and documentary evidence, but he does not provide any more detail regarding what he believes may be lost. Second, a stay will simplify the issues in question, or at least resolve the question of what issues will be relevant at both the preliminary notice stage and trial stage, by potentially narrowing the defenses available to ExxonMobil regarding exemptions. Although the Fifth Circuit's decision is the current law, it is likely that the issue could be raised for this Court's consideration as well. Third, discovery is not complete, and a trial date has not been set. Although Tullis contends that a stay is inappropriate at this early stage, the parties have not already expended the significant resources that will be necessary for discovery and to prepare for trial. This weighs in favor of a stay, not against.

Finally, it is in the interests of judicial economy to stay this case until after the decision in *Helix*. Although Tullis argues that only *Swales* discovery and possibly briefing would likely be complete by the time *Helix* is decided,[3] the issue regarding which employees are exempt and which are not is also relevant to the preliminary discovery and notice process. At this stage, it is unclear how many potential opt-in plaintiffs exist. However, before authorizing notice, this Court must ensure that those receiving notice are actual potential plaintiffs and must avoid "stir[ring] up unwarranted litigation" by allowing notice to too wide of a group. *Swales*, 985 F.3d at 434. The Supreme Court's decision in *Helix* may affect this step because, if the Court agrees with the Fifth Circuit, then a wider group day-rate workers are eligible for FLSA overtime protection and thus, at least regarding this factor, eligible opt-in plaintiffs. However, if the Court reverses the Fifth Circuit, then a more detailed analysis of the daily rates paid to potential opt-in plaintiffs would be necessary to determine if they are truly similarly situated and entitled to overtime pay. Accordingly, proceeding in this case that may involve the same underlying issues to be decided in *Helix* would potentially waste not only the resources of this Court, but also the resources of the parties.

---

[3] Contrary to Tullis's argument, the scheduling order (which was entered after Tullis's briefing was filed) provides that all discovery will be complete by April 3, 2023, and dispositive motions must be filed by May 1, 2023, both of which are likely to be before the Supreme Court's ruling in *Helix*. (D.E. 24 at 2). However, the undersigned believes it is likely that the *Swales* discovery and notice process would result in an extension of these deadlines.

Several other courts in this district have reached the same conclusion. *See Dyck v. Precision Drilling Co., LP*, S.D. Tex. Case No. 4:19-cv-01090, D.E. 65 (staying a case where plaintiff who was paid a day-rate claimed that he was entitled to overtime pay under the FLSA, while the defendant pled that plaintiff were exempt); *Field v. Anadarko Petroleum Corp.*, S.D. Tex. Case No. 4:20-cv-00575, D.E. 131 (staying a case where plaintiff who was classified as an independent contractor was paid a day-rate and claimed that he was entitled to overtime pay under the FLSA, while the defendant pled that plaintiff was exempt); *Vandiver v. Anadarko Petroleum Corp.*, S.D. Tex. Case No. 4:22-cv-02079, D.E. 19 (staying a case where plaintiff who was paid a day-rate and claimed that he was entitled to overtime pay under the FLSA, while the defendant pled that plaintiff was exempt); *Gros v. Anadarko Petroleum Corp.*, S.D. Tex. Case No. 4:22-cv-01943, D.E. 20 (staying a case where plaintiff who was paid a day-rate and claimed that he was entitled to overtime pay under the FLSA, while the defendant pled that plaintiff was exempt).[4]

In sum, it is appropriate to stay a case when the court anticipates that a higher court "will issue a ruling in an unrelated case that addresses unresolved issues in the stayed case." *Coker*, 161 F. Supp. 3d at 495. Although *Helix* does not address the only issue in this case,

---

[4] One notable difference between this case and the other cases where stays have been entered is that, due to the pending motion to dismiss, ExxonMobil has not filed an answer and therefore has not actually raised the defense that Tullis and the opt-in plaintiffs are exempt. Instead, ExxonMobil represents that it *will* raise that defense *when* it files an answer. Should the Court determine that a decision regarding a stay is inappropriate prior to ExxonMobil's filing of an answer, it could either withhold ruling on the motion until after ExxonMobil files its answer, or it could deny the motion without prejudice to refiling following the answer.

it nonetheless addresses an unresolved issue that will likely be relevant to this case at both the notice and merits stages.

Accordingly, it is recommended that the motion to stay (D.E. 8) be **GRANTED** and this case be stayed and administratively closed pending the Supreme Court's decision in *Helix*. Additionally, it is recommended that this Court specify that the parties confer in good faith and file a joint status report within fourteen days following the ruling in *Helix* to briefly report either their agreed or separate views on whether that decision has narrowed either the differences between the parties or the legal issues appropriate to threshold determination.

## IV. MOTION FOR DISCOVERY (D.E. 11)

In the motion for discovery, Tullis seeks to begin the preliminary discovery process outlined in *Swales*. (D.E. 11). ExxonMobil opposes the motion. (D.E. 20). However, given the above recommendation that the case be stayed, it is recommended that Tullis's motion for discovery be **DENIED WITHOUT PREJUDICE** to refiling following the decision in *Helix*. For the reasons discussed above, the course of discovery would differ depending on the outcome in *Helix*, and it would be inappropriate and a waste of this Court's and parties' resources to proceed with discovery and the *Swales* process prior to a ruling in that case.

## V. RECOMMENDATION

Accordingly, it is recommended that ExxonMobil's motion to dismiss (D.E. 7) be **DENIED**, ExxonMobil's motion to stay (D.E. 8) be **GRANTED**, Tullis's motion for

26

discovery (D.E. 11) be **DENIED WITHOUT PREJUDICE**, and this case be stayed and administratively closed.

Respectfully submitted on December 2, 2022.

_____
Julie K. Hampton
United States Magistrate Judge


## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).